United States District Court
Southern District of Texas
**ENTERED**
October 18, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ROBERT DANIEL KEYS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:12-CV-350 |
| | § | |
| CANDACE TORRES, *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Pending before the Court is Defendants' Motion for Summary Judgment (D.E. 140). On December 9, 2015, United States Magistrate Judge B. Janice Ellington issued a Memorandum and Recommendation (M&R, D.E. 156), recommending that Defendants' Motion for Summary Judgment be granted. The parties filed no objections, and the Court adopted the M&R on January 11, 2016. Thereafter, on January 21, 2016, Plaintiff filed his Motion to Alter or Amend the Judgment (D.E. 159) informing the Court that he had not been notified of the M&R. The Court granted Plaintiff's motion and ordered him to submit his objections. The Court has received Plaintiff's timely filed objections (D.E. 167).

Rather than assert targeted objections to specific fact findings or conclusions of law as required by 28 U.S.C. § 636(b)(1), Plaintiff has filed a reiteration of his arguments. So as to avoid a finding that Plaintiff has waived his objections, the Court liberally construes his brief. *United States v. Gonzalez*, 592 F.3d 675, 680 n. 3 (5th Cir. 2009). Consequently, the Court has identified ten objections for consideration.

1

Plaintiff's first objection is to the Magistrate Judge's conclusion that Plaintiff failed to exhaust administrative remedies with respect to the maps Plaintiff contends were seized by Defendants Crites and Diaz.[1] The Magistrate Judge concluded that Plaintiff's claim was unexhausted because Defendants offered undisputed evidence that Plaintiff did not follow the State's two-step grievance procedures.[2] Plaintiff objects by arguing that he did dispute the evidence.

Plaintiff stated in his response that he did follow the relevant procedures by filing a step 1 and step 2 grievance. D.E. 151, p. 10. However, as correctly noted by the Magistrate Judge, Plaintiff offers no evidence to support his assertion. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."). Plaintiff does not substantiate his assertions with any evidence such as affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). Plaintiff states that he is willing to testify as to these facts, but to defeat summary judgment, he was required to offer evidence in the record that would create a genuine dispute of fact. *Id.*; *see also Little*, 37 F.3d at 1075 ("We do not . . .

---

[1] "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

[2] The Texas prison system has developed a two-part formal grievance process, both steps of which must be completed before a prisoner's administrative remedies are considered exhausted. *See Johnson v. Johnson,* 385 F.3d 503, 515 (5th Cir. 2004); *Wright v. Hollingsworth,* 260 F.3d 357, 358 (5th Cir. 2001). The step 1 grievance, which must be filed within fifteen days of the complained-of incident, is handled within the prisoner's facility. *See Johnson,* 358 F.3d at 515. After an adverse decision at step 1, the prisoner has ten days to file a step 2 grievance, which is handled at the state level. *See id.; see also Wendell v. Asher,* 162 F.3d 887, 891 (5th Cir. 1998) (outlining the TDCJ grievance process in more detail).

assume that the nonmoving party could or would prove the necessary facts.").[3] Accordingly, Plaintiff's first objection is **OVERRULED**.

Plaintiff's second objection is that Texas Department of Criminal Justice's (TDCJ's) correspondence review procedures violate due process protections because inmates cannot present arguments to the committees in charge of censorship. D.E. 167, p. 6. The version of the Uniform Offender Correspondence Rules, Board Policy 03.91 (BP 03.91) in effect at the time Plaintiff's publications were rejected allowed prisoners to submit a notice of appeal after the prison's mailroom staff rejected a correspondence. BP 03.91 (D.E. 140-8, p. 14). The publication would then be sent to the Director's Review Committee (DRC), which could either review it or delegate such duties to the Mail Systems Coordinators Panel (MSCP). The DRC/MSCP would review the publication and determine whether it was properly rejected without any input from the prisoner or the sender.[4] *See Prison Litigation News v. Livingston*, 683 F.3d 201, 208-09 (5th Cir. 2012) (describing the appeals process under BP 03.91).

Plaintiff argues that by not allowing him an opportunity to be heard before rejecting his publications, the DRC/MSCP deprives him of property without due

---

[3] Plaintiff has submitted over four hundred pages of exhibits, but he points to none that would support his assertions. In his objections, he cites only to his response, and his response did not point out any evidence either. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court.").
[4] The current version of BP 03.91, as amended in 2013, allows prisoners to submit evidence and written arguments in support of their appeals to DRC/MSCP.

process.[5] However, under this former version of BP 03.91, a prisoner could challenge a DRC/MSCP determination by filing step 1 and step 2 grievances so the rejection would not be final until an inmate had exhausted administrative remedies. D.E. 152-4, p. 25. The evidence provided by Plaintiff shows that he and other prisoners have successfully used the prison grievance system to challenge mailroom rejections. D.E. 153, p. 10; D.E. 152-8, pp. 32-35.

The Fourteenth Amendment Due Process Clause guaranties that life, liberty, or property may not be taken without due process of law. U.S. Const. amend. XIV, § 1; *see also McCrae v. Hankins*, 720 F.3d 863, 869 (5th Cir. 1983) ("[W]hen inmates are afforded the opportunity . . . to possess personal property, they enjoy a protected interest in that property that cannot be infringed without due process."). At a minimum, due process requires that any deprivation of a protected interest "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). The requirements of due process are "flexible and call for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). The Supreme Court has stated that the proper framework for considering whether a person has been afforded sufficient procedural protections requires consideration of three distinct factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

---

[5] Plaintiff cites *Londoner v. City and Cnty. of Denver*, 210 U.S. 373, 379 (1908); *Grannis v. Ordean*, 234 U.S. 385, 394 (1914); *Morrissey v. Brewer*, 408 U.S. 471, 487-88 (1972); *Wolff v. McDonnell*, 418 U.S. 539, 563 (1974); *Guajardo v. Estelle*, 580 F.2d 748, 762 (5th Cir. 1978).

4

> finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (2005); *see also Wilkinson v. Austin*, 545 U.S. 209, 224-25 (2005) (applying the *Matthews* factors in a prison context). By weighing these factors, courts can determine whether a state has met the fundamental requirements of due process by affording an opportunity to be heard at a meaningful time and in a meaningful manner. *City of Los Angeles v. David*, 538 U.S. 715, 717 (2003) (per curiam) (*citing Matthews*, 424 U.S. at 333).

Applying the *Matthews* factors to this case, the two-step grievance process is sufficient to satisfy due process requirements. First, the private interest at stake is the property right of an inmate. Prison officials may "obviously impose reasonable restrictions on the type and amount of personal property inmates are allowed to possess in prison." *McCrae*, 720 F.3d at 869. Plaintiff's property interest is further weakened to the extent his publications create a security hazard and violate BP 03.91. *See Allen v. Thomas*, No. Civ. A. H-02-3132, 2005 WL 2076033, at *7 (S.D. Tex. Aug. 26, 2005). Therefore, the Court must remain cognizant that an inmate's constitutional rights "must be exercised with due regard for the 'inordinately difficult undertaking' that is modern prison administration." *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (*quoting Turner v. Safley*, 482 U.S. 78, 85 (1987)). Thus, the private right at stake here is one that may be curtailed by prison officials in the interest of prison security. *Id.* at 408.

The second factor the Court must consider is whether TDCJ's procedures create a risk of erroneous deprivation and the probable value of additional procedural safeguards.

5

*Matthews*, 424 U.S. at 335.  Plaintiff does not establish that there is a serious risk of erroneous deprivation, nor does he propose additional safeguards.  Rather, Plaintiff states that he is entitled to some sort of hearing, but Plaintiff does not articulate why he believes the two-step grievance procedure to be insufficient.

The third factor the Court must consider is the government's interest, including the administrative burdens that additional procedural requirements would entail.  Here, the state's interest is in maintaining safety and order in its prisons.  The courts have recognized this is an "inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the executive and legislative branches."  *Turner*, 482 U.S. at 85.  Therefore, federal courts should accord a certain level of deference to prison authorities with respect to such matters.  Additional procedural protections, such as requiring an oral evidentiary hearing every time an inmate challenges a DRC/MSCP determination, would put an additional strain on prison resources without much, if any, added benefits.  Accordingly, Plaintiff's second objection is **OVERRULED.**

Plaintiff's third objection is that the TDCJ's administrative appeal process violates constitutional protections which require an independent appeal.  D.E. 167, pp. 15-16. Plaintiff argues that because one of the Defendants, Jennifer Smith, is a supervisor on the MSCP, a member of the DRC, and a respondent to mailroom step 2 grievances, he has been denied any meaningful independent review.  *See Krug v. Lutz*, 329 F.3d 692, 698 (9th Cir. 2003) ("[T]he right to appeal the exclusion of incoming publications to a prison official other than the one who made the initial exclusion decision is [necessary].").

Ms. Smith does not make initial rejections of publications. D.E. 152-4, p. 25. Initial determinations are made at the mailroom level at the different TDCJ facilities. *Id.* The MSCP/DRC, and therefore Ms. Smith, does not become involved until an inmate challenges a mailroom rejection. Plaintiff has not articulated how Ms. Smith's involvement in the different review committees is inappropriate. Furthermore, Plaintiff has not stated that Ms. Smith had an impermissible interest in rejecting his publications. Last, as noted by the Magistrate Judge, TDCJ places an emphasis on uniformity in the interpretation and application of the rules. D.E. 140-8, p. 3 ("the MSCP serves to bring uniformity to the decisions of the various units."). Thus, the Magistrate Judge concluded, "[c]oncerns for uniformity do not mandate independent review and, in some cases, may counsel against complete independence." Accordingly, Plaintiff's third objection is **OVERRULED.**

Plaintiff's fourth objection is that TDCJ does not allow prisoners to view the rejected materials, and thus prisoners cannot effectively appeal mailroom rejections. D.E. 167, pp. 5-6. The Magistrate Judge correctly noted that there is no authority that would require TDCJ to permit prisoners the opportunity to view rejected materials, and that doing so could have adverse consequences, defeating the purpose of the screening procedures. *See Rodriguez v. Bell*, 2:14-cv-447, 2015 WL 3756509, at *4 (S.D. Tex. Jun. 16, 2015). BP 03.91 requires prison officials to give prisoners "a sufficiently detailed description of the rejected publication to permit effective use of the appeal procedures." 140-8, p. 12. Plaintiff has not articulated how this procedure precludes him from effectively appealing mailroom rejections. Plaintiff's fourth objection is **OVERRULED.**

7

Fifth, Plaintiff objects to the Magistrate Judge's characterization of the rejected issues of *Shotgun News*. The Magistrate Judge stated that the rejected materials contained "a discussion of assembly and/or disassembly of certain weapons." Plaintiff argues that none of the publications that were rejected contained discussions. Rather, they simply contained diagrams of components and parts with no discussion on how those parts go together.

This dispute over whether such illustrations can be described as discussions is inconsequential. BP 03.91 prohibits materials that "contain information regarding the manufacture of . . . weapons." D.E. 140-8, p. 12. As noted by the Magistrate Judge and Defendants' expert witness, such diagrams can be used by inmates to fabricate weapons or nonfunctioning replicas of weapons that would pose a serious threat at TDCJ facilities because most of its correctional officers are unarmed. D.E. 140-10. Plaintiff complains of a distinction that is not significant. Plaintiff's fifth objection is **OVERRULED.**

Plaintiff's sixth objection is to the Magistrate Judge's reliance on Defendants' expert witness. Plaintiff argues that Defendants' expert, Jeremy Larue, is not qualified to give his opinion because he is not an expert in weapons manufacturing. Plaintiff argues that, unlike Plaintiff and three other inmates that he designated as experts, Mr. Larue has no experience in casting, machining, welding, weapons manufacturing, or gunsmithing. However, Mr. Larue's testimony concerns none of those subjects. D.E. 140-10. Rather, Mr. Larue's testimony is about prison security and the risks posed by firearms, a topic in which he is well versed due to his role as security operations warehouse manager and chief armorer for TDCJ. His job duties include apprising himself of incidents in which

inmates have gained access to firearms and firearm-related contraband. Defendants have shown that Mr. Larue qualifies as an expert by knowledge and experience and that his testimony is based on sufficient facts and data. Fed. R. Evid. 702. Plaintiff's sixth objection is **OVERRULED**.

Plaintiff's seventh objection is that the Magistrate Judge erroneously concluded that BP 03.91 is constitutional. Plaintiff launches a facial attack on BP 03.91 arguing that it is unconstitutionally vague and overbroad. The Magistrate Judge correctly concluded that BP 03.91 is reasonably related to a legitimate penological objective and facially valid. *See Thornburgh*, 490 U.S. at 416. The regulation in *Thornburgh* was broader than BP 03.91, yet was found constitutional.

The regulation under review in *Thornburgh* gave a prison warden discretion to reject any publication he determined "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." *Id.* at 403 n. 1. The Supreme Court concluded that "[w]here the regulations at issue concern the entry of materials into the prison . . . a regulation which gives prison authorities broad discretion is appropriate." *Id.* at 416. In other words, the Supreme Court held that the regulation's wide breadth was itself reasonably related to a legitimate penological interest. Thus, Plaintiff's argument, that BP 03.91 is unconstitutional because it is subject to multiple interpretations, has no merit. Plaintiff's seventh objection is **OVERRULED**.

Plaintiff's eighth objection is that the Magistrate Judge erroneously concluded that TDCJ's "all or nothing rule," in which publications are rejected in their entirety, is constitutional. Plaintiff argues that TDCJ should instead institute a "clip rule," in which

the violative portions of a publication are removed. D.E. 167, pp. 6, 13-15. Plaintiff argues that a clip rule is a reasonable alternative to TDCJ's current practice. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Turner*, 482 U.S. at 91.

The Magistrate Judge observed that the Supreme Court rejected Plaintiff's proposed clip rule in *Thornburgh*. In *Thornburgh*, the Supreme Court considered a similar all or nothing rule. *Thornburgh*, 490 U.S. at 418. The district court, based on trial testimony, had found that prison officials reasonably feared that a clip rule would create more discontent. *Id.* The Supreme Court affirmed, stating, "when prison officials are able to demonstrate that they have rejected a less restrictive alternative because of reasonably founded fears that it will lead to greater harm, they succeed in demonstrating that the alternative they in fact selected was not an 'exaggerated response' under *Turner*." *Id.* at 419.

Plaintiff argues that the finding in *Thornburgh* is not applicable here because that finding was premised on a belief that partially destroying inmates' property would lead to more discontent among the prisoners. To distinguish *Thornburgh*, Plaintiff has provided the declarations of 188 inmates stating that they would not object to, and would prefer, Plaintiff's proposed clip rule. D.E. 152-9, 10, 11, & 12. However, *Thornburgh* also stated that the administrative inconvenience of such a rule was a factor that warranted consideration. *Thornburgh*, 490 U.S. at 419.

Plaintiff further argues that the regulation at issue in *Thornburgh* prohibited the prison from establishing a database of rejected publications. *Id.* at 405. TDCJ, on the other hand, keeps a database of rejected publications which would make the review process less burdensome. However, the database evidence did not factor into the Court's holding in *Thornburgh*.

Plaintiff has provided a thorough cost benefit analysis to support his argument that instituting a clip rule is actually less burdensome than rejecting publications *in toto*. D.E. 152-4, pp. 28-32; D.E. 152-5, p. 2. Plaintiff argues that the current practice requires four levels of administrative review, resulting in more paperwork and logistical hurdles, whereas Plaintiff's proposal can be accomplished with a quick snip of the scissors. However, currently, once a mailroom employee finds a violation in a publication, the whole publication is rejected. The mailroom employee does not review the remaining content and can move on to the next piece of mail. Under Plaintiff's proposed rule, mailroom employees would have to comb through the entire publication and remove all objectionable content. Plaintiff's proposal is obviously more burdensome than the current practice. Plaintiff's eighth objection is **OVERRULED**.

Plaintiff's ninth objection is that the Magistrate Judge narrowed the scope of her analysis to Plaintiff's claims premised on the seizure of his maps and the rejection of *Shotgun News*. Defendants presented evidence that, at the time Plaintiff filed his Amended Complaint, Plaintiff had exhausted administrative remedies with respect to the rejection of only one publication, *Shotgun News*. D.E. 140-2, 3, 4, 5, 6, & 7. Plaintiff

11

argues that he properly exhausted the rejection of 13 other publications or correspondences that the Magistrate Judge did not consider.

The first publication that Plaintiff complains of is a book titled *How to Make Marshmallows*. Plaintiff offers no evidence that this book was rejected or that he completed the two-step grievance procedure. Furthermore, Plaintiff states that the DRC overturned the mailroom's rejection, and he eventually received the publication so there is no claim here. D.E. 167, p. 13.

The second publication is *How to Grow Your Own Tobacco*. The rejection of this book was overturned after Plaintiff filed a step 2 grievance, and Plaintiff received the book. D.E. 152-8, p. 24. Furthermore, this incident occurred in September of 2014—after Plaintiff filed his amended complaint (D.E. 97) in July of 2014. Thus this claim is not part of this lawsuit.

The third publication is *Small Grain Raising: Corn, Wheat, Oats, and Rice*. Plaintiff never ordered this publication. Rather, he inquired as to whether this book would be approved if he did order it. D.E. 152-2, pp. 2-3. Plaintiff was informed that the book was not in the system, and that if Plaintiff ordered the book, it would have to be reviewed, subject to possible rejection. Plaintiff has not stated a claim in this regard.

Fourth, Plaintiff complains that mailroom staff did not allow him to send a sealed letter to an out of state attorney.[6] Plaintiff's grievance was resolved in his favor so there is no claim here. D.E. 152-4, p. 19.

---

[6] Generally, inmates must submit unsealed mailed so that mailroom staff can inspect it before it is sent. Legal correspondence is exempt from this requirement. BP 03.91 (D.E. 140-8, p. 10).

The fifth publication is *Taste of Home Cookbook*. Plaintiff complains that mailroom staff ripped off this book's binding before delivering it to him. Plaintiff has not offered any evidence to show that he exhausted the administrative remedies. In addition, this incident happened in October of 2015, and thus is not part of this lawsuit. D.E. 153, p. 23.

Plaintiff's sixth complaint is that mailroom staff does not permit him to send sealed mail to the veterans administration. This claim was grieved at both administrative levels, but in 2015. Thus, this claim is not part of this lawsuit. D.E. 152-6, pp. 2-5.

The seventh complaint is the rejection of *Petroleum Fuels Handbook*. The rejection was overturned and the book was delivered to Plaintiff so there is no claim here. D.E. 152-2, p. 6.

Plaintiff's eighth complaint is that the Magistrate Judge did not address two issues of *Fur-Fish-Game Magazine* that went missing in 2013. The only evidence Plaintiff offers in support of this claim is an inquiry he made to mailroom staff regarding the magazines' whereabouts. He has offered no evidence to show that he exhausted administrative remedies with respect to this claim. 152-2, p. 10.

Plaintiff's ninth complaint is that the Magistrate Judge did not address the rejection of the book *What's in Your Bug Out Bag*. Plaintiff has offered the step 1 and step 2 grievances that were resolved against him. D.E. 153, p. 12. But this rejection occurred in 2015, and thus is not part of this lawsuit. *Id.*

Plaintiff's tenth complaint is the rejection of *The Trappers Bible*. Plaintiff has not offered evidence to show that a final determination has been made with respect to this

13

publication. Plaintiff has offered a step 2 grievance which was resolved by ordering mailroom staff to send the book to the DRC for reconsideration. D.E. 153, p. 10. In addition, this dispute occurred in 2015, and is thus not part of this lawsuit. *Id.*

Plaintiff's eleventh and twelfth complaints are that the Magistrate Judge did not address the rejection of two issues of *Gun Digest* or a copy of *U.S. Army's Special Forces Handbook*. Plaintiff offers no evidence that these claims were exhausted. In his objections, Plaintiff cites to grievance #2012189776 (D.E 152-4, pp. 2-7). However, the grievance that Plaintiff cites was for the denial of *Shotgun News*.

Plaintiff's thirteenth complaint is that the Magistrate Judge did not address the rejection of *U.S. Army's Land Navigation and Recognition Guide*. This rejection occurred in 2015, and is not part of this lawsuit. D.E. 153, p. 12.

As described above, Plaintiff's complaints regarding the additional publications or correspondences fail for at least one of several reasons: (1) they were not exhausted; (2) the administrative review resulted in a favorable determination for Plaintiff; or (3) the relevant conduct occurred after Plaintiff filed his amended complaint and thus is not a subject of this lawsuit. Plaintiff's ninth objection is **OVERRULED**.

Plaintiff's tenth objection is to the Magistrate Judge's conclusion that the individual defendants are entitled to qualified immunity. The Magistrate Judge correctly concluded that Plaintiff has not shown that Defendants' conduct violated a constitutional right. Plaintiff's tenth objection is **OVERRULED**.

Having reviewed the findings of fact, conclusions of law, and recommendations set forth in the Magistrate Judge's Memorandum and Recommendation, as well as

Plaintiff's objections, and all other relevant documents in the record, and having made a de novo disposition of the portions of the Magistrate Judge's Memorandum and Recommendation to which objections were specifically directed, the Court **OVERRULES** Plaintiff's objections and **ADOPTS** as its own the findings and conclusions of the Magistrate Judge. Accordingly, Defendants' Motion for Summary Judgment (D.E. 140) is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**.

ORDERED this 18th day of October, 2016.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE